**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------

MARK L. EMMONS,

Petitioner,

v.                                                                    09-CV-675
                                                                     (DNH/DRH)
DALE ARTUS,

Respondent.
----------------------------------------------------------------

**APPEARANCES:**                          **OF COUNSEL:**

MARK L. EMMONS
Petitioner Pro Se
05-B-1832
Clinton Correctional Facility
Post Office Box 2002
Dannemora, New York 12929

HON. ERIC T. SCHNEIDERMAN          LEA L. LA FERLITA, ESQ.
Attorney General for the State          Assistant Attorneys General
   of New York
Attorney for Respondent
120 Broadway
New York, New York 10271

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE¶**

### REPORT-RECOMMENDATION AND ORDER[1]

Petitioner pro se Mark L. Emmons ("Emmons") is currently an inmate in the custody

of the New York Department of Correctional Services at Clinton Correctional Facility.  Pet.

(Dkt. No. 1) at 1.  On May 26, 2005, a jury in Onondaga County Court found Emmons

guilty of Attempted Robbery in the First Degree and Criminal Possession of a Weapon in

--------------------------------

[1]This matter was referred to the undersigned for report and recommendation
pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.4.

1

the Third Degree.  Pet. at 1.  Emmons was sentenced principally to a total term of fifteen years imprisonment and is currently serving that sentence.  Id. at 1.  Emmons now seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Id. at 1-2.  Emmons contends that (1) he was denied a fair trial because the jury was "tainted"; (2) his state and constitutional rights to a speedy trial were violated; and (3) he was denied the effective assistance of trial counsel.  Id. at 6.  For the reasons which follow, it is recommended that the petition be denied.

## I. Background

The material facts which led to Emmons' conviction occurred on June 1, 2004.  T. 321.[2].  Emmons drove his vehicle to a Wegman's grocery store in Clay, New York and parked in the parking lot.  T. 385-387.  While in the parking lot, Emmons smoked crack-cocaine before exiting his vehicle.  T. 387-88.  Shortly thereafter, Emmons approached Barbara Pettrotti as she entered her van, displayed a box cutter, and said "I need a ride."  T. 322-23.  Emmons forced the victim into her van and, as she struggled to escape, he repeatedly hit her in the face and screamed "shut up, bitch."  T. 323-24.  During the struggle, Emmons ripped the victim's dress before she managed to fall out of the van's door onto the pavement.  T. 324-26.  Four witnesses observed the attack and corroborated Pettrotti's description.  T. 285-89, 293-99, 306-10, 314-19.  After the attack, Emmons fled into  woods behind the grocery store where he was pursued and eventually

---

[2]"T" refers to the trial transcript. See Dkt. No. 9-24. The page numbers refer to the pages of the actual transcript and not those of the docket.

caught by two of the witnesses.  T. 293-98, 308-10, 389-92.  Emmons was arrested,

indicted, tried,[3] convicted, and sentenced as indicated above.  On April 25, 2008, the

Appellate Division affirmed the conviction.  <u>People v. Emmons</u>, 50 A.D.3d 1513 (4th Dep't

2008).  Leave to appeal to the New York Court of Appeals was denied on July 10, 2008.

<u>People v. Emmons</u>, 10 N.Y.3d 958 (2008).  This action followed.


## II. Exhaustion of State Court Remedies

Title 28, U.S.C. § 2254(b)(1) provides that "[a]n application for a writ of habeas

corpus on behalf of a person in custody pursuant to the judgment of a State court shall not

be granted unless it appears that . . . the applicant has exhausted the remedies available

in the courts of the State."  <u>Id.</u>  This exhaustion requirement is necessary to "express[]

respect for our dual judicial system and concern for harmonious relations between the two

adjudicatory institutions."  <u>Daye v. Attorney Gen.</u>, 696 F.2d 186, 191 (2d Cir. 1982)

(citations omitted).

Thus, state courts must be afforded "one full opportunity to resolve any

constitutional issues by invoking one complete round of the State's established appellate

review process."  <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999).  To accomplish this, a

petitioner "must have set forth in state court all of the essential factual allegations asserted

---

[3]Emmons testified at trial that he was unaware of his actions at the time because of a seizure disorder and his use of crack cocaine.  T. 389-91, 395, 525-54.  The existence of the disorder and Emmons' use of crack cocaine were not disputed, but the parties offered conflicting expert testimony on Emmons' likely awareness of his actions.  <u>Compare</u> T. 507-12, 531-37, 549, 556 <u>with</u> 560-73, 601.

3

in his federal petition; if material factual allegations were omitted, the state court has not had a full opportunity to rule on the claim." Daye, 696 F.2d at 191 (citations omitted). This includes placing before the state court "the same legal doctrine he asserts in his federal petition." Id. at 192 (citations omitted). However, a habeas petitioner is not barred from asserting new legal theories as long as "the ultimate constitutional question" is the same. Id. at 192, n.4. If a defendant fails to raise a claim at any appellate level, the defendant has procedurally defaulted on those claims and is barred from raising them on a subsequent habeas petition in federal court. O'Sullivan, 526 U.S. at 848.

To meet this exhaustion requirement, a habeas petitioner must take his claims to the Appellate Division through direct appeal. See Daye, 696 F.2d at 190-91 & n.3 (citations omitted). However, if a habeas corpus petitioner fails to raise his habeas claims on direct appeal, in New York he may nonetheless comply with 28 U.S.C. § 2254(c) by "exhaust[ing] all available post-conviction remedies under N.Y. Crim. Proc. Law § 440.10." Felder v. Goord, 564 F. Supp. 2d 201, 215 (S.D.N.Y. 2008) (citations omitted). This includes appealing any denial of a motion under CPL § 440.10 to the highest court of the state. Id.; see also Bacchi v. Senkowski, 884 F. Supp. 724, 730-31 (E.D.N.Y. 1995). Accordingly, if the petitioner has raised his habeas corpus claims "in his post-trial motion under CPL § 440 and then appeal[ed] the denial of the claims, . . . [the petitioner] has invoked a 'complete round' of the 'available' state procedure and properly exhausted his judicial remedies with regard to those claims." Lyon v. Senkowski, 109 F. Supp. 2d 125, 134 (W.D.N.Y. 2000).

4

However, N.Y. Crim. Proc. Law § 440.10 permits only certain claims to be heard in a post-conviction motion to vacate rather than on direct appeal.  Lyon, 109 F. Supp. 2d at 134-35.  Those claims that are permitted under the statute, decided on the merits, and then unsuccessfully appealed to the appellate division have been exhausted.  Id. at 134.  Conversely, where any of the claims raised in a motion to vacate are denied and the "'state court rests its judgment on an adequate and independent state ground, including a state procedural bar,'" a federal court is precluded from subsequent review of those claims.  Bacchi, 884 F. Supp. at 731 (quoting Reid v. Senkowski, 961 F.2d 374, 377 (2d Cir. 1992)).  For this preclusion to take place, "'the last state court rendering a judgment in the case [must] clearly and expressly state[] that its judgment rests on a state procedural bar.'"  Id. at 731 (quoting Harris v. Reed, 489 U.S. 255, 262 (1989)).

Finally, even if the federal court is precluded from hearing a procedurally barred claim, it may nonetheless review the claim if the habeas petitioner can show cause for the procedural default and actual prejudice resulting therefrom, or that failure to consider the claim will result in a fundamental miscarriage of justice because he is innocent.  DiGuglielmo v. Smith, 366 F.3d 130, 135 (2d Cir. 2004) (citations omitted).  "Cause" requires a showing that "some objective factor external to the defense impeded counsel's efforts to raise the claim in state court" or that the basis for a claim was not reasonably available to counsel.  Levine v. Comm'r of Corr. Servs., 44 F.3d 121, 127 (2d Cir. 1995) (internal quotation marks and citations omitted).  As to a miscarriage of justice, this necessarily involves a showing that the petitioner is actually innocent.  Sweet v. Bennett,

353 F.3d 135, 141 (2d Cir. 2003).

Here, Emmons made a direct appeal to the Appellate Division and raised two issues: "Whether the evidence was insufficient[,] the verdict was against the weight of the evidence," and "the sentence was excessive."  Dkt. No. 9-5, Ex. E at 6.  The Appellate Division affirmed the conviction and the Court of Appeals denied Emmons' leave to appeal.  However, Emmons does not raise these same claims in this habeas petition.  He has raised claims that (1) he was denied a fair trial because the jury pool was "tainted" and improper statements were made by the prosecution; (2) petitioner's state and constitutional rights to a speedy trial were violated; and (3) trial counsel was ineffective. Pet. at 6.  Thus, these claims were not exhausted through direct appeal.

However, in Emmons' second motion to vacate pursuant to CPL § 440.10, filed after the direct appeal had already been submitted to the Appellate Division and while that decision was pending, he made three arguments that are similar to the ones made in this habeas petition.  As described above, it is possible to meet the exhaustion requirement through collateral proceedings such as a motion to vacate.  Emmons' motion was denied and appealed unsuccessfully to the Appellate Division.  Respondent argues that because of Emmons' CPL § 440.10 motion and the appeal therefrom, certain of Emmons' habeas claims are exhausted while others are not.

With regards to Emmons' habeas claim that he was denied a fair trial because the jury pool was "tainted" and improper statements were made by the prosecution, the same arguments were presented to the County Court in the above described motion to vacate.

6

Thus, these claims are exhausted in state court.  However, in denying these claims, the

County Court, relying on CPL § 440.10(2)(b),  held that these claims "do not involve

factual matters beyond the scope of the record or legal issues which could not have been

asserted before the final judgment of conviction and therefore, the defendant's motion is

not subject for review . . . [and] is procedurally barred."  Dkt. No. 9-14, Ex. N at 8.  The

County Court also concluded that the claims raised in the motion could have been brought

in Emmons' direct appeal and that CPL § 440.10 was not the correct vehicle for seeking

review.  Id. at 6-9.  Therefore, although he raised these claims and then appealed them to

the highest court, they were denied because of state procedural bars, and this Court is

accordingly precluded from reviewing them. Bacchi, 884 F.Supp. at 730-731.

Nevertheless, since there is no further state remedy available for Emmons to return to,

those claims are in procedural default and should be deemed exhausted for the purposes

of this habeas application.  Ferrer v. Superintendent, 628 F. Supp.2d 294, 309-310

(N.D.N.Y. 2008) (citations omitted).

As to Emmons' ineffective assistance of counsel claim, he has exhausted this claim

to the extent his basis is a failure by counsel to make a statutory and constitutional speedy

trial motion.  Even though the County Court denied this claim because it had already been

decided on the merits in Emmons' first motion to vacate, the court also briefly addressed

the merits of the claim and denied it on those grounds as well. Dkt. No. 9-14, Ex. N at 6-7.

This renders the claim exhausted for the purposes of this habeas petition.  However,

Emmons now also argues that trial counsel was ineffective for not requesting a mistrial or

7

a new jury pool after the alleged "taint", and that trial counsel was ineffective for not seeking curative instructions after alleged prosecutorial misconduct.  Emmons did not argue that counsel was ineffective on those grounds in the motion to vacate that was eventually appealed.  Therefore, these claims were never fully heard by the state courts, they are unexhausted, and this Court is precluded from hearing them.

Lastly, this also appears to be the first time that Emmons has raised a substantive speedy trial claim as a constitutional violation.  Pet. at 6.  Although Emmons argued in his motion to vacate that counsel was ineffective for not making a motion pursuant to N.Y. Crim. Proc. Law § 30.30, he did not argue that there was a constitutional violation of his right to a speedy trial.[4]  Even if he had, an ineffective assistance claim is "separate and distinct from the substantive claim incorporated in the ineffective assistance claim, such that exhaustion of the ineffective assistance claim is not exhaustion of the underlying substantive claim."  Bond v. Walker, 68 F. Supp. 2d 287, 296 (S.D.N.Y. 1999). Furthermore, the County Court never addressed a constitutional speedy trial claim in its decision, bolstering the conclusion that no substantive claim was made.  Therefore, the claim is unexhausted.

In sum, all of Emmons claims, with the exception of the claim that counsel provided ineffective assistance when he failed to make a speedy trial motion, are in procedural default and Emmons can no longer return to state court to exhaust the claims.  As

---

[4]Emmons merely gave a general citation to the United States Constitution, and the Sixth and Fourteenth Amendments after describing the state speedy trial standard.

explained above, for this Court to review Emmons defaulted claims, Emmons must show cause and prejudice or actual innocence.

Emmons makes no such showing for either inquiry.  Emmons did move for a writ of error coram nobis where he faulted his appellate counsel for failing to include the present habeas claims in the direct appeal to the Appellate Division.  Dkt. No. 9-18, Ex. R at 4-5. This could be construed as an attempt to establish cause and prejudice for failing to exhaust his claims.  However, Emmons does not restate this failure either as a substantive claim or as cause for default in the instant habeas petition.  In order to establish attorney dereliction as cause for procedural default, a petitioner must meet the standards for showing constitutionally ineffective assistance of counsel.  See Edwards v. Carpenter, 529 U.S. 446, 451-52 (2000); Murray v. Carrier, 477 U.S. 478, 488-89 (1986).  Here, Emmons cannot succeed by showing "merely that counsel omitted a nonfrivolous argument," because counsel is not required to "advance every nonfrivolous argument that could be made."  Aparicio v. Artuz, 269 F.3d 78, 95 (2d Cir. 2001).  In fact, it is commonplace for attorneys to "winnow[] out weaker arguments on appeal and focus[] on one central issue or at most on a few key issues."  Soto v. Conway, 565 F. Supp. 2d 429, 437 (E.D.N.Y. 2008) (quoting Jones v. Barnes, 463 U.S. 745, 751-52 (1983)).  Thus, Emmons has failed to demonstrate cause for his procedural defaults.  Furthermore, at no point does Emmons assert his actual innocence and no evidence has been presented to this Court, by Emmons or otherwise, that indicates Emmons is actually innocent.

Accordingly, Emmons' defaulted claims in the instant petition are procedurally barred from federal habeas review.

### III. Merits

Even though all but one of Emmons' claims are in procedural default, the claims in this petition should also be denied on the merits.[5]

The AEDPA allows a federal court to grant habeas relief if the state court proceedings "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "w[ere] based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1).  The Supreme Court and this Circuit have determined that "a decision is contrary to clearly established federal law . . . if the state court arrives at a conclusion opposite to that reached by [the] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts."  Davis v. Grant, 532 F.3d 132, 140 (2d Cir. 2008) (internal quotations omitted) (quoting Williams v. Taylor, 529 U.S. 362, 412-13 (2000)).  A decision will be based on "an unreasonable application of clearly established federal law if the state court correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case, or refuses to extend

_____

[5] Even though all but one of Emmon's claims are unexhausted and he is in procedural default, the AEDPA allows such unexhausted claims to be "denied on the merits, notwithstanding the failure . . . to exhaust . . . ." 28 U.S.C. 2254(b)(2).

a legal principle that the Supreme Court has clearly established to a new situation in which

it should govern." Hoi Man Yung v. Walker, 468 F.3d 169, 176 (2d Cir. 2006) (internal

quotation marks omitted) (quoting Williams v. Taylor, 529 U.S. 362, 407-08 (2000)).


## A. Tainted Jury Pool

Emmons claims that the jury pool was tainted when they saw him wearing

handcuffs and an arm tag from the Onondaga County Jail in the courtroom because it

showed the jury that he was already incarcerated.  Pet. at 6. Respondent argue that

Emmons has failed to show any facts from the record supporting that he was actually in

handcuffs or wearing an arm tag in front of the jury pool.  Dkt. No. 8 at 25.  However,

attached to Emmons petition is a letter from his trial attorney, Edward Klein, addressing

his appearance in handcuffs.  Pet. at 8.  Klein writes:

> The answer to your question about appearing in handcuffs in front of
> prospective jurors is that we could have moved for a mistrial at that point and
> they would have had to bring in a new panel of jurors to start all over.  It was a
> tactical decision whether to move for a mistrial at that point or not - assuming it
> would have even been granted for an inadvertent violation of the rule - but I do
> not remember what stage we were at in jury selection or the details of our
> reasons for not moving for a mistrial at that point.

Id. at 8.  Nonetheless, respondent points out that at some point before trial Emmons was

told by the judge to remove his jail arm tag to protect him from prejudice with the jurors.[6]

Dkt. No. 8 at 25.  Respondent argues that if the trial judge recognized the possible

---

[6]Respondents cite to page 3 of the transcript for evidence of this.  This court has
only been presented with the trial portion of the transcript and not the portion cited by
respondents.

prejudice from the arm tag and directed Emmons to remove it, the trial judge would have likewise addressed the handcuffs if Emmons had worn them.  Id.  Thus, the fact that there was no mention of handcuffs indicates that Emmons likely was not wearing them in the courtroom.

At best, there is conflicting evidence as to whether Emmons was ever wearing handcuffs or a jail arm tag at any point in front of the jury.  If he was indeed wearing either, there is no evidence of whether any of the prospective jurors actually saw him, and if any did, how many, for how long, and whether any were eventually selected for the jury. Where there is "considerable doubt" as to whether an appellant was actually viewed by jurors while in handcuffs, a court should not overturn an otherwise valid conviction.  United States v. Taylor, 562 F.2d 1345, 1359 (2d Cir. 1977).  Even if jurors had somehow seen Emmons in handcuffs or a jail arm tag,"an inadvertent view by jurors of defendants in handcuffs, without more, is not so inherently prejudicial as to require a mistrial."  Id.

Even if Emmons was in handcuffs or wore a jail arm tag, there is no evidence that he or his counsel objected to it.

> Although the State cannot, consistently with the Fourteenth Amendment, compel an accused to stand trial before a jury while dressed in identifiable prison clothes, the failure to make an objection to the court as to being tried in such clothes, for whatever reason, is sufficient to negate the presence of compulsion necessary to establish a constitutional violation.

Estelle v. Williams, 425 U.S. 501, 512-513 (1976).  In fact, the letter from Klein indicates that he may have realized that his client was in handcuffs at some point during the jury selection, but that he decided for tactical reasons not to object or move for a mistrial.

Thus, in addition to procedurally defaulting, Emmons has also failed to meet his burden of proof on this claim.

Accordingly, Emmons petition should also be denied on the merits.


## B. Improper Statements by Prosecutor

Emmons also claims that his due process rights were violated by improper statements by the prosecutor and the failure of the trial judge to issue curative instructions regarding these comments.  Pet. at 6.  Emmons argues that he was prejudiced during trial when, during two separate exchanges, the prosecutor mentioned that Emmons was already incarcerated and elicited testimony of that fact from witnesses.  Id. at 6; Dkt. No. 13 at 9-10; T. 420, 564-565.

The first exchange occurred during the prosecutor's cross examination of Emmons:

> Q: And I think the other thing you testified to, correct me if I'm wrong, is that you haven't, you didn't start receiving treatment for these seizures until January of this year?
>
> A: That's correct.
>
> Q: And this incident happened in June?
>
> A. Right.
>
> Q: And ironically enough January is approximately a month after you saw Dr. Dougherty?
>
> A: I guess, yes.
>
> Q: And you never mentioned to the jail that you had the seizure problem that you needed to be treated for until after

Dr. Dougherty came to visit you in the jail. Isn't that correct?

A: I did mention it to them but the nurse that I mentioned it to told me to deal with it like I did when I was on the street.

Q: Mr. Emmons, isn't it true that no one besides your attorney has ever seen you have a seizure in jail?

A. Not to my knowledge, no.

Q: Isn't that what you told us, isn't that what you told Dr. --

A: I told him that he had witnessed it first hand, yes, but a lot of times I don't even know I'm having them and I couldn't tell you if people recognize if I was having it or not.

T. 420-21.

The second incidence occurred during the direct examination of Dr. Weisman, the

medical expert for the prosecution:

Q: At the request of the District Attorney's office did you examine the defendant, Mark Emmons, in this case?

A: I did.

Q: Do you recall when you did that?

A: Yes, that was May 18th, so earlier this month.

Q: And what did you do in preparation for that examination?

A: Sure, I examined Mr. Emmons at the jail right next door to this building, not real familiar with Syracuse, but –

Q: Let me, I'm sorry, let me interrupt you to clarify that.  Prior to examining him what did you do in preparation, did you review anything?

A: Yes, the District Attorney's office supplied me with a number of materials, including affidavits of witnesses, some

14

> reports from the police officers involved, I reviewed 911 tapes that recorded the calls into 911 at that time on June 1st, '04. Had conversations with Ms. Russo, and asked for all available medical records both in the past if possible as well as the jail records since Mr. Emmons has been incarcerated since June 1st.
>
> Q: And do you recall how long your examination of the defendant was?
>
> A: Yes, on May 18th I spoke with Mr. Emmons for about an hour-and-a-half.

T. 564-65.

When a prosecutor makes comments or elicits testimony at trial about a defendant's incarceration, "brief and fleeting references are generally allowed, but extended comment is impermissible." United States v. Deandrade, 600 F.3d 115, 118 (2d Cir. 2010) (citations omitted). The court in Deandrade concluded that "[t]he two instances in which the government witnesses commented on [defendant]'s incarceration during trial were isolated, apparently unintentional on the part of the prosecution, and incidental to legitimate areas of inquiry; moreover, notwithstanding the several comments comprising the first instance, the government never referenced them thereafter." Id. at 119 (citations omitted). Such is the case here. As to the prosecutor's first references to Emmons' incarceration, they were fleeting and incidental to critical cross-examination where the prosecutor sought to impeach Emmons regarding his medical condition. T. 420. The other comments were made by the prosecutor's expert witness who was also testifying about Emmons' condition. T. 564-565. The prosecutor asked the witness to describe what he did to prepare for his evaluation of Emmons, but twice the witness mentioned

Emmons presence at the jail.  Clearly, these comments were elicited unintentionally and came "incidental to legitimate areas of inquiry."  Deandrade, 600 F.3d at 119.

Furthermore, the failure of defense counsel to object to the testimony and failure to request curative instructions undermines petitioner's prejudice claim.  Arce v. Henderson, 477 F. Supp. 71, 74 (S.D.N.Y. 1979), aff'd, 636 F.2d 1200 (2d Cir. 1980).  Lastly, any prejudice caused by these comments were minimal given the fact that Emmons' own defense counsel had already elicited testimony and made comments that refererred to Emmons' arrest and subsequent medical treatment during incarceration.  T. 391-402, 405, 505-07.  For these reasons, Emmons petition on this ground should be denied on the merits.


### C. Speedy Trial

Emmons claims that his constitutional right to a speedy trial was violated.  Pet. at 6. In Barker v. Wingo, the Supreme Court set forth the standard for determining whether a defendant was denied the constitutional right to a speedy trial.  407 U.S. 514, 530 (1972). The Court established a balancing test that includes four factors: "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant."  Id. at 530; United States v. Jones, 129 F.3d 718, 724 (2d Cir. 1997).  This is a flexible test and the factors are to be weighed on an ad hoc basis.  United States v. Ray, 578 F.3d 184, 191 (2d Cir. 2009).  Furthermore, the factors are connected and should be considered together with the relevant circumstances.  Flowers v. Warden, Conn. Corr.

Inst., 853 F.2d 131, 134 (2d Cir. 1998)

As to the length of delay, the Supreme Court has indicated that although the Barker v. Wingo test involves a balance of the four factors, unless the length of the delay is "presumptively prejudicial," a court will not entertain the speedy trial claim.  U.S. v. Vassell, 970 F.2d 1162, 1164 (2d Cir. 1992) (citing  Doggett v. United States, 505 U.S. 647, 651-652 (1992)).  Although there is no precise measurement for the threshold when a delay becomes presumptively prejudicial, generally "a delay of over eight months meets this standard, while a delay of less than five months does not."  Id.; See also Rodriguez v. Superintendent, Collins Corr. Facility, 549 F. Supp. 2d 226, 239 (N.D.N.Y. 2008).

Emmons contends that there was a 172-day delay between the arrest and the commencement of trial.[7]  Pet. at 6.  Respondent acknowledges that the period between the arrest and the commencement of trial was actually almost twelve months.[8]  Id. at 6; Dkt. No. 8-1 at 21.  While this time period is sufficient to trigger the remaining factors in the speedy trial inquiry, the delay did not constitute an extraordinary or per se violation, since federal courts have found much longer delays do not violate the Sixth Amendment.

---

[7]It appears that Emmons may also be asserting a speedy trial claim based on N.Y. Crim. Proc. Law §30.30. However, that law affords a state court remedy and provides no basis for granting federal habeas corpus relief.  Cadilla v. Johnson, 119 F. Supp. 2d 366, 374 (S.D.N.Y. 2000).  Notwithstanding that fact, the prosecution announced its readiness for trial at Emmons' arraignment, one month after his arrest.  Dkt. No. 9-1, Ex. A at 4. Thus, even if trial counsel had made a motion to dismiss based on statutory speedy trial grounds, it would have been meritless.

[8]Emmons was arrested on June 1, 2004 and trial commenced on May 22, 2005, a period of 355 days.

Rodriquez, 549 F. Supp. 2d at 239 (citing cases and concluding that "[t]he Supreme Court and the Second Circuit have found that no constitutional speedy trial violation occurred in cases where the period between the arrest and trial was much longer"); see also Flowers, 853 F.2d at 133 (holding delay of seventeen months is not in violation of Sixth Amendment and citing several cases where delays ranging from two years to five years were also not unconstitutional).

As to the second Barker factor, "reason for the delay",

> different weights should be assigned to different reasons. A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government.  A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

Barker, 407 U.S. at 531.  Neither Emmons nor the record itself provide any reasons for the delay between arrest and trial, let alone any "deliberate procrastination", "negligent inaction", or other willful attempt by the state to gain "a tactical advantage."  See Flowers, 853 F.2d at 134.  Emmons does assert that the delay aggravated his "faulty memory due to crack-cocaine addiction."  Dkt. No. 1 at 6.  However, Emmons has proffered no facts to support this conclusion, nor has he accused the State of delaying trial for the purpose of aggravating his faulty memory.

As to the third factor regarding the petitioner's assertion of his right to a speedy trial, Emmons did not raise any speedy trial issue until his second post-conviction motion. Dkt. No. 9-11, Ex. K at 3.  Even then, it was only raised in terms of defense counsel's

18

ineffective assistance for failing to make a motion.  This habeas petition is the first time Emmons has raised the speedy trial issue as a substantive argument standing alone.  This fact weighs heavily against Emmons since there would have been ample opportunity for him to raise the issue previously, especially if the delay had indeed affected his ability to remember the events leading to his arrest as he claims.  United States v. Vasquez, 918 F.2d 329, 338 (2d Cir.1990) (concluding that inmates who waited approximately 22 months before raising their speedy trial violations "hardly renders plausible their contention that an expeditious resolution of their cases was a matter of pressing constitutional importance"); See also Barker, 407 U.S. at 532 ("[F]ailure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial").

The final factor requires a court to assess any prejudice the defendant may have suffered as result of the delay.  "Although a showing of prejudice is not a prerequisite to finding a Sixth Amendment violation, courts generally have been reluctant to find a speedy trial violation in the absence of genuine prejudice."  United States v. Jones, 129 F.3d 718, 724 (2d Cir. 1997).  As mentioned above, Emmons claims that his memory from the day of his arrest was already lacking because of the effects of using crack-cocaine and suffering from his medical condition, and that the prosecution's delay only exacerbated this deficiency.  Pet. at 6.  The Supreme Court has held that prejudice can result if "defense witnesses are unable to recall accurately events of the distant past."  Barker,  407 U.S. at 532.

"Loss of memory, however, is not always reflected in the record because what has

been forgotten can rarely be shown." Id.  In this case, Emmons has made a bare

conclusion that the delay affected his memory at trial.  Pet. at 6.  No facts exist to support

this conclusion, and in fact, Emmons testified at length during trial as to specific details

about his activities leading up to the incident in the parking lot.  T. 118-144.  When it came

to remembering anything about the attack on the victim in the parking lot, Emmons had no

recollection, which, according to the defense, was a result of Emmons' cocaine use and

his medical condition.  T. 144-45; 525-44.  However, there exists no basis to conclude that

the delay before trial caused the memory loss rather than the combined effect of cocaine

use and Emmons' medical condition.  Furthermore, the victim and several witnesses all

gave consistent testimony at trial of Emmons' actions in the parking lot.  T. 285-89; 293-

99; 306-10; 314-19.  Thus, any possible effect on Emmons' memory would not have

resulted in any substantial prejudice.

Considering all of the Barker factors in their totality, this court finds that Emmons'

constitutional right to a speedy trial was not violated.  Emmons' petition on this ground

should be denied on its merits.


### D. Ineffective Assistance of Counsel

Emmons makes two arguments in support of his claim that he was denied the

effective assistance of trial counsel.  Pet. at 6.  First, Emmons asserts that defense

counsel failed to make a motion to dismiss on constitutional and statutory speedy trial

grounds.  Pet. at 6.  Emmons contends that there was an inexcusable delay of 172 days

between his arrest and the commencement of trial.  Id. at 6.  Second, Emmons claims that

trial counsel failed to move for a mistrial, call for another panel of prospective jurors, or

"simply to postpone the selection of jurors to another day."  Id. at 6-8.  This second

argument appears to stem from Emmons separate claim that the jury pool was tainted

after he was "paraded" through the court room in hand cuffs and while wearing a jail arm-

tag and that improper comments were made by counsel and witnesses.  Id. at 8.

     To establish ineffective assistance of counsel, a petitioner must demonstrate that

(1) counsel's performance was deficient and (2) counsel's deficient performance

prejudiced the petitioner.  Strickland v. Washington,  466 U.S. 668, 687 (1984).  See also

Purdy v. United States, 208 F.3d 41, 44 (2d Cir. 2000).  The first prong requires a

petitioner to demonstrate that counsel's performance fell below an objective standard of

reasonableness considering all the circumstances.  Strickland, 466 U.S. at 688.  There is

a strong presumption that counsel "made all significant decisions in the exercise of

reasonable professional judgment."  Id. at 690.  To pass the second prong, petitioner must

"show that there is a reasonable probability that, but for counsel's unprofessional errors,

the result of the proceeding would have been different."  Id. at 694.  "A reasonable

probability is a probability sufficient to undermine confidence in the outcome."  Id. at 669.

     On Emmons first argument, that trial counsel was ineffective for failing to make a

motion to dismiss on speedy trial grounds, this Court has already found that such a motion

would not have been meritorious on federal constitutional grounds.  See subsection III(C)

supra.  Furthermore, this court also addressed Emmons' claim that counsel was

ineffective for not making a motion to dismiss based on N.Y. Crim. Proc. Law § 30.30.

The prosecutor announced he was "ready for trial" well within the statutory six-month

period.  Dkt. 9-1, Ex. A at 4.  Trial counsel was ot ineffective for failing to make what would

have amounted to a futile speedy trial motion.  Mallet v. Miller, 432 F. Supp. 2d 366, 383

(S.D.N.Y. 2006).  As such a motion would have been denied, defendant suffered no

prejudice by his counsel's strategic decision not to proffer a futile motion, and therefore his

petition should be denied.

Likewise, this court finds no merit in Emmons second argument, that trial counsel

was ineffective because he failed to act when the jury pool became tainted.  Even

assuming that Emmons was wearing handcuffs and the incarceration armband, a showing

that trial "counsel failed to make a pre-trial motion . . . [is generally, in itself,] insufficient . .

. to establish ineffective assistance of counsel . . .."  Jelinek v. Costello, 247 F. Supp. 2d

212, 274 (E.D.N.Y. 2003).  The insufficiency lies in the fact that it could have been a

tactical decision for trial counsel not to move for a mistrial.  Id.  It is well-settled that when

reviewing a habeas claim based on ineffective assistance of counsel, there is a strong

presumption that the attorney's performance was reasonable and that the attorney's

actions may constitute trial strategy.  Strickland, 466 U.S. at 689; Bell v. Miller, 500 F.3d

149, 156 (2d Cir. 2007).  In fact, "strategic choices made after thorough investigation of

law and facts relevant to plausible options are virtually unchallengeable . . .."  Williams v.

Herbert, 435 F. Supp. 2d 199, 205 (W.D.N.Y. 2006) (citing Strickland, 466 U.S. at 690).

During the voir dire, Emmons' trial counsel could have concluded that,

notwithstanding the fact that Emmons was visible to prospective jurors while in hand cuffs, Emmons would not be prejudiced by that jury pool, or that the jury pool was actually favorable to Emmons.  Trial counsel may have also concluded that moving for mistrial would further delay the trial while not providing any substantial benefit to Emmons. Whatever the possible reason, trial counsel confirmed in a letter to Emmons dated November 12, 2008 that "it was a tactical decision whether to move for a mistrial at that point".  Pet. at 8.  Accordingly, the decisions of Emmons' counsel were tactically motivated and his petition for habeas relief falls well short of what is necessary.

Moreover, to the extent that Emmons' claims could be construed to allege that his counsel should have sought curative instructions for the prosecutor's alleged improper statements, such contentions are also meritless.  The fact that Emmons' received medical care throughout his incarceration that supported his contentions of memory loss due to the unpredictability of the drugs he was taking in combination with his seizure disorder were statements essential to his defense.  Accordingly, making objections about fleeting remarks by opposing counsel during questioning, in light of Emmons' counsel's direct references to his incarceration in respect to his medical treatment, would not be productive or helpful to Emmons' representation as the fact that he was incarcerated was not a secret.

Moreover, it is undisputed that Emmons' counsel zealously represented him with this consistent trial defense, questioning medical experts about Emmons' physical condition and the possibility for memory loss, attempting to refute the accusations that

Emmons' attack was purposeful.  Counsel also participated in pre-trial discovery and motion practice, as well as effectively cross-examined all prosecution witnesses.

Accordingly, Emmons' petition should also be denied on this ground.

### IV.  Conclusion

For the reasons stated above, it is recommended that the petition for a writ of habeas corpus (Dkt. No. 1) be **DENIED**.

Furthermore, the Court finds that petitioner has not made a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2) ("A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."); see also Lucidore v. New York State Div. of Parole, 209 F.3d 107, 112 (2d. Cir. 2000).  Therefore, the Court recommends that no certificate of appealability should issue with respect to any of petitioner's claims.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.   Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE**

REVIEW.  <u>Roldan</u>, 984 F.2d at 89 (citing <u>Small v. Secretary of Health and Human</u>

<u>Services</u>, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

**IT IS SO ORDERED.**

Dated: January 10, 2011
      Albany, New York

_David R. Homer_
United States Magistrate Judge